UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ANTHONY MACK, | : | |
| Plaintiff, | : | CASE NO. 3:16-cv-875 (VAB) |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER SEMPLE, et al., | : | |
| Defendants. | : | NOVEMBER  22, 2016 |
| | : | |

**INITIAL REVIEW ORDER RE AMENDED COMPLAINT**

Plaintiff, Anthony Mack, currently incarcerated at the Cheshire Correctional Institution, filed a complaint in this case *pro se* under 42 U.S.C. § 1983.  He asserts claims for deliberate indifference to safety and neglect.  On June 17, 2016, the Court ordered Mr. Mack to file an amended complaint clarifying his claims.  Specifically, the Court directed Mr. Mack to explain what actions each defendant took or failed to take, that resulted in the alleged deprivation of his constitutional rights.  *See* ECF No. 7 at 4.  On June 27, 2016, the Court received two amended complaints, mailed in separate envelopes, ECF Nos. 11, 12.  Attached to the second Amended Complaint [ECF No. 12] was a note stating, "Void all others use this one."   ECF No. 12 at 1.

In light of this note, the Court considers ECF No. 12 to be the operative Amended Complaint in this case.  On July 7, 2016, and July 11, 2016, Mr. Mack filed documents described as attachments to the Amended Complaint.  The Court considers the allegations in the second Amended Complaint and both attachments in this Order.  Mr. Mack includes the same defendants, Commissioner Semple, Warden Falcone, Captain McDaniels, Dr. Girbino and

Correctional Officer Angel, in the Amended Complaint.

I.  Standard of Review

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Weixel v. Board of Education of New York*, 287 F.3d 138, 146 (2d Cir.2002)).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).

Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.  Allegations

Mr. Mack alleges that, as a child, he was beaten and sexually assaulted while in foster care and also learned about the killing of another child in foster care.

In May 2015, Mr. Mack alleges that he was doing push-ups in the dayroom at Garner Correctional Institution, when an allegedly transgendered inmate, who allegedly identifies as female, committed a sexual assault against him.  Mr. Mack claims that, when he was leaving the dayroom to report the incident to correctional staff, the inmate, who allegedly assaulted him, called him a rat and said he would be accused of rape and that charges would be pressed against him if he reported the incident.  Mr. Mack states that he was afraid because there were no cameras in the dayroom.

Another time, Mr. Mack was sitting in the ping pong dayroom and this same inmate allegedly assaulted him again.  After complaining to this inmate, that inmate again allegedly threated to accuse him of rape.  On a third occasion, this same inmate allegedly called Mr. Mack to witness an act of masturbation.  Again, this inmate allegedly told Mr. Mack that if he told anyone, a claim of rape would be lodged against him by this inmate and another inmate.

Mr. Mack claims he began to experience nightmares, flashbacks, panic attacks and anxiety attacks.  He states that he requested additional medication and was prescribed Seroquel.  He also claims he was placed on suicide watch for several days.  Mr. Mack states he gave a recorded statement to Prison Rape Elimination Act ("PREA") staff and was provided some help, although he was reluctant to admit on camera that he allegedly had been humiliated as a man.

Correctional Officer Angel allegedly told another inmate, who was allegedly intimately involved with the inmate who had assaulted Mr. Mack, that Mr. Mack had spoken with PREA staff.  Correctional Officer Angel was allegedly unaware that this inmate planned to marry the inmate who had allegedly assaulted Mack.  Mr. Mack opines that, if this inmate loved the allegedly assaultive inmate enough to marry her, he could have killed Mr. Mack.

3

Dr. Girbino, allegedly aware of Mr. Mack's history of sexual and physical abuse, knew that the incidents with the allegedly assaultive inmate had caused a setback. Mr. Mack claims, however, that Dr. Girbino approved Mr. Mack's transfer from Garner Correctional Institution to Cheshire Correctional Institution, instead of providing appropriate mental health treatment. According to Mr. Mack, doctors at Cheshire Correctional Institution stated that he requires long-term insight-oriented psychotherapy.

Mr. Mack claims that inmates at Cheshire Correctional Institution have told Mr. Mack that the allegedly assaultive inmate was transferred from there to Garner Correctional Institution for excessive promiscuity. Mr. Mack also has heard that this inmate tested positive for the AIDS virus, and he is fearful because an intimate part of this inmate's body allegedly touched Mr. Mack's face.

### III. Discussion

Mr. Mack has alleged various constitutional violations on the part of Defendants. He alleges that each Defendant violated his Eighth Amendment rights, specifically alleging failure to protect on the part of Commissioner Semple and Warden Falcone, deliberate indifference to serious medical needs on the part of Dr. Girbino, and deliberate indifference to safety on the part of Captain McDaniels and Correctional Officer Angel. For the reasons outlined below, each of these claims is dismissed.

#### A. Failure to Protect

Mr. Mack seeks compensatory and punitive damages from both Commissioner Semple and Warden Falcone for their failure to protect him from sexual abuse by an inmate who required special management.

It is well-settled in this Circuit that, in order for damages to be awarded for an alleged constitutional deprivation, each defendant must be "personally involved" in the alleged harm. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  A defendant's personal involvement in an alleged constitutional deprivation may be established where he or she either "directly participated in the infraction"; "failed to remedy the wrong" after learning of the violation through a report or appeal; "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue"; or "was grossly negligent in managing subordinates who caused the unlawful condition or event."  *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (citing cases).

The Court informed Mr. Mack of this requirement in its prior Order and directed him to clearly state in his Amended Complaint what actions each defendant took, or failed to take, that violated his constitutional rights.  Mr. Mack, however, has not alleged any facts suggesting that either Commissioner Semple or Warden Falcone was personally involved in the alleged constitutional deprivations.  Mr. Mack states in the first attachment that he has named Commissioner Semple because it is his responsibility to ensure that all inmates are appropriately classified, and he should provide special housing for inmates more anatomically female than male.  He has named Warden Falcone as a defendant because, as warden, it is his responsibility to ensure the safety of all inmates.  Nevertheless, Mr. Mack alleges no facts suggesting that defendants Semple and Falcone were ever made aware of the allegedly assaultive inmate's actions.  As a result, the claims against defendants Semple and Falcone fail because of the absence of factual allegations probative of their personal involvement.

In any event, even if Mr. Mack had pled that they were personally involved, these defendants should still be dismissed from this lawsuit.  Mr. Mack contends that defendants Semple and Falcone failed to protect him from harm by creating or enforcing a policy of housing male-to-female transgender inmates in male correctional facilities.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal citations and marks omitted).  In order for a right to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*.

The Court has not identified any binding precedent indicating that the right claimed here was clearly established law. All reported cases asserting failure to protect based on the housing placement of transgender inmates involve claims filed by the transgender inmate. *See, e.g., Lopez v. City of New York,* 2009 WL 229956, at *13 (S.D.N.Y.2009); *Farmer v. Brennan*, 511 U.S. 825, 829, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (noting that the "practice of federal prison authorities is to incarcerate preoperative transsexuals with prisoners of like biological sex"). Significantly, another court within this Circuit has held that, even if the failure to house a male-to-female transgender inmate in a female correctional facility could rise to the level of a constitutional violation of the transgender inmate's right, the right is not clearly established and,

6

therefore, correctional officials would be entitled to qualified immunity on the claim. *See Wilson v. David*, No. 9:08-cv-618, 2010 WL 610714, at *5 n.5 (N.D.N.Y. Feb. 17, 2010) (granting summary judgment to correctional facility superintendents where transgender inmate was sexually assaulted by a corrections officer, rejecting plaintiff's argument that the facility was responsible due to its policy of assigning transgender inmates to prisons with those of similar biological sex).

Absent any cases in this Circuit holding that housing male-to-female transgender inmates in a male correctional facility violates the constitutional rights of the male inmate population, defendants Semple and Falcone are protected by qualified immunity on Mr. Mack's claim. As a result, the claims against them must be dismissed.

      B.      <u>Deliberate Indifference to Serious Medical Needs</u>

Mr. Mack alleges that Dr. Girbino failed to provide him with sufficient medical treatment when she approved his transfer to a different correctional facility, instead of providing him with more substantial therapy. According to Mr. Mack, Dr. Girbino was aware of his history of sexual and physical abuse and knew how the incidents with this allegedly assaultive inmate had affected him at the time she approved the transfer. The Court construes these allegations as a claim for deliberate indifference to serious mental health needs.

To state a claim for deliberate indifference to a serious medical need, Mr. Mack must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). Objectively, the alleged medical need must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Subjectively, the defendants

must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006).

Mr. Mack has met the first prong, as the need for mental health treatment has generally been determined to be "sufficiently serious" for purposes of a deliberate indifference claim. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) ("The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners,' *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), which includes needs for mental health care"). The facts alleged here, however, do not establish the second prong of the analysis as required to state a claim against Dr. Girbino.

This subjective component requires allegations suggesting that Dr. Girbino was "actually aware of a substantial risk that serious inmate harm [would] result" from Mr. Mack's transfer to Cheshire Correctional Institution. *Salahuddin*, 467 F.3d at 280. Mr. Mack does not allege that Dr. Girbino knew his transfer would cause serious harm. To the contrary, the surrounding circumstances suggest that Dr. Girbino transferred him in order to protect him from harm in light of his allegations regarding the allegedly assaultive inmate.

At most, Mr. Mack's allegations suggest that Dr. Gibrino may have been negligent in her failure to recommend continuing mental health treatment upon transfer. A finding of negligence alone, though it may be sufficient to support a claim for medical malpractice, does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a difference of opinion regarding what constitutes an appropriate response and treatment constitute deliberate indifference. *See Ventura v. Sinha*, 379 F. App'x 1, 2-3 (2d Cir. 2010) ("a

8

disagreement with the medical care provided is insufficient to state a constitutional claim"); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (distinguishing deliberate indifference from "a mere difference of opinion over a matter of medical judgment").

Mr. Mack's challenge to Dr. Girbino's medical assessment reflects a disagreement over Mr. Mack's mental health needs and required treatment. Though these allegations could arguably rise to the level of medical malpractice, they do not allege the state of mind required for a cognizable claim under section 1983. *See Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation"). Accordingly, the claim against Dr. Girbino is dismissed.

C.      Deliberate Indifference to Safety

Mr. Mack states that Captain McDaniels was the unit manager of the housing unit in which he and the allegedly assaultive inmate were housed. He alleges that Captain McDaniels should not have permitted this inmate to enter the dayroom, where there were no cameras to ensure Mr. Mack's safety, and that Captain McDaniels should have forced correctional officials to transfer this inmate to special management housing. He also alleges that Correctional Officer Angel told the inmate who allegedly planned to marry the allegedly assaultive inmate that Mr. Mack had spoken with PREA staff. Mr. Mack alleges that, upon learning that Mr. Mack had spoken with PREA staff, this inmate could have harmed Mr. Mack because of his relationship with the allegedly assaultive inmate.

The Court considers the claims against Captain McDaniels and Correctional Officer Angel to be claims for deliberate indifference to safety. To state an Eighth Amendment claim

9

for deliberate indifference to safety, Mr. Mack must show that the alleged conduct is objectively sufficiently serious and that the defendant acted with a "sufficiently culpable state of mind," that is, that he or she acted "maliciously and sadistically" to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The defendant must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. To determine whether Mr. Mack faced an excessive risk of serious harm, the courts "look at the 'facts and circumstances of which the official was aware at the time [s]he acted or failed to act.'" *Hartry v. City of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (citing *Heisler v. Kralik*, 981 F.Supp. 830, 836 (S.D.N.Y.1997)).

Mr. Mack has not alleged any facts suggesting that defendant McDaniels acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Mr. Mack does not allege that Captain McDaniels knew that this inmate had sexually harassed other inmates, nor does he allege that Captain McDaniels had any reason to believe that permitting this inmate access to areas not covered by cameras would endanger Mr. Mack's safety. Even if the Court were to assume that Captain McDaniels knew of this inmate's previous transfer, due to alleged promiscuous activity, this would not necessarily give Captain McDaniels actual knowledge that Mr. Mack was at risk of sexual harassment from this inmate. *See Warren v. Goord*, 476 F. Supp. 2d 407, 410 (S.D.N.Y. 2007) ("To act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" (internal citations and marks omitted)). Negligence alone is not cognizable in a section 1983 action. *See Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (in a section 1983 action alleging deliberate indifference, "mere negligence will not suffice"). Because Mr. Mack has failed to allege the culpability required for

10

a deliberate indifference to safety claim as to Captain McDaniels, the claims against this defendant are dismissed.

Mr. Mack also claims that Correctional Officer Angel was deliberately indifferent to his safety when she told the other inmate about his prior communications with PREA staff. Mr. Mack, however, specifically claims that Correctional Officer Angel was unaware of the depth of the relationship between these two inmates when she made those statements. Thus, she would have been unaware that she was making a statement that was possibly dangerous to Mr. Mack. Absent this awareness, defendant Angel was not deliberately indifferent to Mr. Mack's safety. *Farmer*, 511 U.S. at 834. Mr. Mack also references neglect, which the Court assumes is a characterization of Correctional Officer Angel's actions as negligent. As negligence is not cognizable under section 1983, *Hayes*, 84 F.3d at 620, any negligence claim against defendant Angel is also dismissed.

## ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The Amended Complaint is **DISMISSED** under 28 U.S.C. § 1915A(b)(1) for failure to allege plausible claims for relief against any defendant.

(2) The Clerk of the Court is directed to enter judgment and close this case.

(3) In light of the dismissal of this action, Mr. Mack's motions for appointment of counsel [**ECF Nos. 15, 18**], subpoena [**ECF No. 16**], exchange of custody [**ECF No. 19**] and restraining order [**ECF No. 21**] are **DENIED** as moot.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of November 2016.

                                        /s/ Victor A. Bolden
                                        VICTOR A. BOLDEN
                                        UNITED STATES DISTRICT JUDGE